# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | NO. 2:10-CR-88 |
| | ) | (2:15-CV-225) |
| RANDALL B. CAUSEY, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed by Randall B. Causey on June 10, 2016 (DE #452). For the reasons set forth below, the motion is **DENIED.**

Further, this Court declines to issue Defendant a certificate of appealability. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Randall B. Causey, #10672-027, Yazoo City FCI - 5888 - Medium, Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 5888, Yazoo City, MS 39194, or to such other more current address that may be on file for Randall B. Causey.

BACKGROUND

On May 20, 2010, Randall B. Causey ("Causey") was indicted on wire fraud charges along with two co-defendants, Gordon Rainey and

Sheila Chandler.  The indictment was superseded twice.  The second superseding indictment, filed on October 20, 2010, charged Causey and five co-defendants with conspiracy to commit mortgage fraud in violation of 18 U.S.C. § 1349.  (DE #94).  According to the third superseding indictment, the conspiracy had two purposes: (1) to defraud lenders into providing mortgage loans for homes in Gary, Indiana; and (2) to defraud buyers into buying the properties using loans from the lenders.  (DE #94 at 5).  Causey was also charged with six separate counts of wire fraud.  (DE #94 at 32-33).

Causey and the Government entered into a plea agreement, but Causey did not plead guilty; he instead proceed to trial.  (DE ##144, 152). Following a five day trial, the jury found Causey guilty of all counts.  (DE ##199, 202).  On February 6, 2013, this Court sentenced Causey to 108 months on each count, to run concurrently.  (DE #327).

Causey filed a timely appeal raising numerous issues.  One of the arguments raised on appeal was that this Court erred in excluding the testimony of Doug Kvachkoff ("Kvachkoff")[1], an owner of a title insurance company.  This Court was affirmed in all respects, including the decision to exclude Kvachkoff's testimony. *United States v. Causey*, 748 F.3d 310 (2014).

Causey filed the instant motion under section 2255 on June 10,

---

[1]The Court notes that the briefs and the transcript spell Doug Kvachkoff's name as "Kavachkoff."  This is incorrect, and the Court has used "Kvachkoff" throughout this order, except where quoting directly from the briefs or the transcript.

2

2015, setting forth one argument: his trial counsel was ineffective in failing to produce Kvachkoff as a witness after telling the jury in the opening statement that he would produce him. The Government filed a response brief. Causey did not file a reply brief. The motion is ripe for adjudication.

DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus motion pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.*; *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255

3

> petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Causey's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt.'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his

> confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.* Here, the Court assessed Causey's claim with these guidelines in mind.

Ineffective Assistance of Trial Counsel

Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the petitioner must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The second *Strickland* prong requires a petitioner to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Regarding the

5

deficient-performance prong, great deference is given to counsel's performance, and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted). A defendant must establish specific acts or admissions that fall below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Canaan v. McBride*, 395 F.3d 376, 385-86 (7th Cir. 2005). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689).

In this case, Causey's trial counsel, in his opening argument, represented that Kvachkoff would testify.

> You're also going to hear from Doug Kavachkoff. Doug is the owner of a title insurance company. I think their main office is in Crown Point on Main Street. Indiana Title Network is his company. And he'll tell you he's been in the title business I think now for - - let's say 27 years. He also has a law degree. He's a lawyer. And he started doing closings some 20 some odd years ago. And he's going to take you through the title process, and he's going to take you through

6

> once loan approval is obtained, the procedure
> that's utilized both for the closing, once the
> package is put together, once there's loan
> approval. And we're presupposing that there's
> been a purchase agreement signed and all that
> business, that the loan has been shipped off,
> like Sheila Chandler did with all her false
> documents, got the loan approved and then
> schedule a closing. And Doug is going to tell
> you at the closing what documents come in,
> what documents come out, what the bank
> requires him to do as a title company to close
> the loan.
>
> He will explain to you that what was done on
> these settlement statements - - they're called
> HUD-1s. That's the form number on the bottom
> of each settlement statement. It's called a
> HUD-1. There's some other forms the evidence
> - - you're going to see and should be aware
> of. They are the loan applications.

(DE #344 at 49-50).

Attorney Woodward, however, did not disclose Kvachkoff as an expert as required by Federal Rule of Criminal Procedure 16. At trial, he argued that he did not need to disclose Kvachkoff as an expert because he was not offering expert testimony. This Court disagreed, finding that Kvachkoff's testimony, as described by Attorney Woodward in his opening statement, was expert testimony that should have been disclosed. Nonetheless, this Court agreed to allow Kvachkoff to testify as an occurrence witness, so long as Attorney Woodward did not venture into expert testimony. As Kvachkoff began to testify, however, it quickly became apparent that he did not have any recollection of the closing at issue. At that point, Attorney Woodward made an offer of proof, as follows:

> MR. WOODWARD: In light of the Court's rulings

7

> on my questions concerning policies and
> procedures in the office, I would ask the
> witness the following questions and he would
> give the following answers:
>
> Does your office have a standard policy and
> procedure for obtaining funding numbers?
>
> Answer: Yes.
>
> What is that policy and procedure?
>
> After conducting the closing, the closer calls
> the lender, faxes the settlement statement, or
> HUD-1, to the lender. After some period of
> time, the lender calls back with a funding
> number. It's then notated on the front of the
> file.
>
> Question: Do you ever disburse before -- is it
> your policy or procedure to disburse ever
> before obtaining a funding number?
>
> Answer: No.
>
> What is your policy and procedure?
>
> Once we receive the funding number, the closer
> is then authorized to close the loan.
>
> What is the purpose of faxing the HUD to the
> lender?
>
> The purpose -- answer: The purpose of faxing
> that settlement statement to the lender is so
> that they can review the settlement statement,
> determine that it is in compliance with their
> instructions and then provide the funding
> number to our office.

(DE #348 at 1138-39).

With regard to the first prong of *Strickland*, this Court has already determined that, in order to introduce the proffered testimony, Attorney Woodward should have disclosed Kvachkoff as an expert. The Court of Appeals for the Seventh Circuit affirmed that ruling, and the Government concedes that Attorney Woodward erred by

failing to recognize that Kvachkoff should have been disclosed as an expert in accordance with Rule 16. Accordingly, Attorney Woodward's performance did fall below an objective standard of reasonableness and did not fall within the range of professionally competent assistance. *See Barker*, 7 F.3d at 633.

The second prong of *Strickland*, however, is not satisfied. Causey argues that he was prejudiced because counsel promised Kvachkoff's testimony and did not deliver. According to Causey, Kvachkoff's testimony was central to his defense, but Causey was prejudiced by Attorney Woodward's failure to elicit the promised testimony even if the proffered testimony was immaterial and not exculpatory.

In *Harris v. Reed*, the Seventh Circuit Court of Appeals found prejudice where counsel, in opening argument, "primed the jury to hear a different version of the incident," but then failed to produce witnesses to support that theory, leaving the jury to conclude that the defense could not make good on the statements made during opening argument. *Harris v. Reed*, 894 F.2d 871, 878-79 (7th Cir. 1990). The Court in *Harris* cited to *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988), to support this proposition.

In *Anderson*, the defendant had killed his estranged wife and did not deny his guilt, but the jury had to determine, based on his state of mind, whether he was guilty of first degree murder, second degree murder, or manslaughter. *Anderson*, 858 F.2d at 17. In his opening statement, Anderson's counsel indicated he "would call a

9

psychiatrist and a psychologist, whose testimony would show that defendant was 'walking unconsciously toward a psychological no exit... Without feelings, without any appreciation of what was happening, Bruce Anderson on that night was like a robot programmed on destruction.'" *Id.* The next day, Anderson's counsel rested his case without presenting testimony from either the psychiatrist or psychologist. The Court held that this was prejudicial as a matter of law, noting that, "we cannot but conclude that to promise even a condensed recital of such powerful evidence, and then not produce it, could not be disregarded as harmless." *Id.*

In a more recent case, the Seventh Circuit addressed a similar claim. *United States v. Leibach*, 347 F.3d 219 (7th Cir. 2003). In *Leibach*, counsel promised in opening that the defendant would testify that he was present at the scene of the crime and saw what happened but was not involved in the crime. *Id.* at 257. He further claimed that the evidence would show that his client was not a member of a gang. Counsel, without offering any explanation to the jury, did not deliver on these promises. The court noted that:

> Turnabouts of this sort may be justified when unexpected developments warrant changes in previously announced trial strategies. However, when the failure to present the promised testimony cannot be chalked up to unforeseeable events, the attorney's broken promise may be unreasonable, for little is more damaging than to fail to produce important evidence that had been promised in an opening. The damage can be particularly acute when it is the defendant whose testimony

>fails to materialize[.]

*Id.* (internal citations, ellipses, and quotations omitted). Although the court found counsel's failure to have the defendant testify after promising he would testify objectively unreasonable, the court also found these failures "not so prejudicial that it would support relief in and of itself," and found that he was entitled to relief based on the "more important failure to investigate exculpatory occurrence witnesses." *Id.* at 258-60.

Causey's contention - that his ineffective assistance of counsel claim hinges not on what Kvachkoff would have testified to but the fact that his testimony was promised but never delivered - is not borne out by case law. In *Harris, Anderson* and *Liebach*, the promised testimony was both material and exculpatory. In *Harris*, counsel "primed the jury to hear a different version of the incident" but then failed to produce the witnesses that could have "provided the jury with a viable basis for clinging to the presumption that Harris was innocent." *Harris*, 894 F.2d at 878-79. In *Anderson*, the defendant's state of mind was at issue and if an expert had testified consistent with the representations made in the opening statement, the jury may have found the defendant guilty of a lesser crime. *Anderson*, 858 F.2d at 17. In *Liebach,* the defendant's testimony, promised by counsel, was directly opposed to evidence produced by the prosecution, and, if believed, would have resulted in a not guilty verdict. *Leibach*, 347 F.3d at 257. It may well be true that "little is more damaging than to fail to

11

produce *important* evidence that had been promised in an opening." *See Anderson*, 858 F.2d 16 at 17 (emphasis added). But, where the evidence is not important, and in fact, may be irrelevant, prejudice is not a given.

In this case, if Kvachkoff had testified as proffered, it is unclear what Causey would have gained. Causey claims in his brief that Attorney Woodward told him that their defense strategy was "based on the premise that an expert defense witness would be presented to prove that there was no way for petitioner to know what Sheila Chandler was doing after he found and presented potential home buyers to her, because there was no way for Ms. Chandler to know whether or not the closing would go through." (DE #453 at 7-8). The proffered testimony of Kvachkoff does not establish that there was no way for Ms. Chandler to know whether the closing would go through, but more importantly, it is unclear why this matters.

The facts of this case have been set forth in *United States v. Causey*, and will not be repeated in detail here. Two co-conspirators testified against Causey in detail, leaving little question of Causey's knowledge of and involvement in the conspiracy. Several victims and unindicted co-conspirators also testified against Causey. Kvachkoff's testimony would not have undermined any of that testimony. Given the strength of the evidence admitted at trial, there is not a better than negligible chance that, by hearing Kvachkoff's testimony in full, the jury

12

would have acquitted Causey.

As noted earlier, habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt*, 83 F.3d 812, 816 (7th Cir. 1996). To succeed in demonstrating prejudice, Causey must show by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this case, counsel erred – he should not have promised testimony that he could not deliver – but Causey cannot demonstrate by a reasonable probability that, but for that error, the outcome would have been different.

Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Causey has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the aforementioned reasons, Causey's section 2255 motion is **DENIED.** Further, this Court declines to issue Defendant a certificate of appealability. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Randall B. Causey, #10672-027, Yazoo City FCI - 5888 - Medium, Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 5888, Yazoo City, MS 39194, or to such other more current address that may be on file for the Petitioner.

**DATED: June 13, 2016**          /s/ RUDY LOZANO, Judge
                                  **United States District Court**